UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID DODD and PAULA DODD,

Plaintiffs,

v.

TEXTRON, INC., et al.,

Defendants.

CASE NO. 3:21-cv-5177 BHS-TLF

ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION

This matter comes before the Court on the Report and Recommendation ("R&R") of the Honorable Theresa L. Fricke, United States Magistrate Judge, Dkt. 22, and Defendants' objections to the R&R, Dkt. 23.

## I. BACKGROUND

In March 2019, Plaintiffs David and Paula Dodd were driving a side-by-side off road vehicle, the Wildcat XX, on a sand dune in Winchester Bay, Oregon when it stalled out and rolled down the dune. Dkt. 1, ¶¶ 3.3, 3.5. During the accident, Paula Dodd's seatbelt failed, and her door ripped off. *Id.* ¶ 3.5. As a result, she suffered a severe laceration to her left hand, displaced proximal phalanx fractures to her left hand, a displaced fracture of the right humerus, and a displaced tuberosity humeral fracture. *Id.*

Defendant Textron, Inc. is a multi-industry company incorporated in Delaware with its principal place of business in Rhode Island. Dkt. 8 at 2. Textron describes itself as a "holding company." Dkt. 8-1, ¶ 3. Defendant Textron Specialized Vehicles, Inc. ("TSV") is Textron's subsidiary. Dkt. 8 at 2. TSV designs and manufactures vehicles and equipment, including off-road vehicles, and it owns Arctic Cat, Inc.—the company that manufactures the Wildcat XX. Dkt. 8-2, ¶¶ 2–3. TSV is also incorporated in Delaware but has its principal place of business in Georgia. Dkt. 8 at 2. TSV does not have any company-owned dealerships in Washington, but it does sell its off-road vehicles through nine independent, non-exclusive dealerships in the state. *Id.*

The Dodds reside in Deer Park, Washington, which is in Eastern Washington near Spokane and the Idaho border. Dkt. 1, ¶ 1.1; Dkt. 11, ¶ 5. On July 20, 2018, the Dodds purchased a 2018 Wildcat XX from CGM Enterprises, Inc. in Sandpoint, Idaho. Dkt. 11, ¶ 6. The Dodds assert that they only purchased the Wildcat XX after seeing an advertisement for the vehicle in Washington. Dkt. 1, ¶ 3.4.

The Dodds sued Textron and TSV in March 2021, asserting that the companies negligently designed, tested, manufactured, labeled, distributed, marketed, and promoted the Wildcat XX and violated the Washington Products Liability Act ("WPLA"), RCW Ch. 7.72. *Id.* ¶¶ 4.1, 4.2. They seek damages for past and future medical expenses, costs, property damage, past and future income loss, permanent disability, emotional injuries, permanent scarring, impaired earning capacity, pain and suffering, loss of enjoyment of life, loss of consortium, and other damages to be proven at trial. *Id.* ¶ 5.1, 5.2.

Textron and TSV moved to dismiss for lack of personal jurisdiction in April 2021, arguing primarily that the companies' conduct in Washington did not relate to the Dodds' accident in Oregon. Dkt. 8 at 4–6. They alternatively argued that the complaint should be dismissed for improper venue. *Id.* at 6–7. The Dodds argued that Textron and TSV are properly subject to personal jurisdiction in Washington because they regularly conduct business in the state, they are registered in the state, and their advertising of the Wildcat XX in Washington caused the Dodds to purchase the vehicle. Dkt. 10.

Judge Fricke issued the instant R&R recommending that this Court deny the companies' motion to dismiss. Dkt. 22. Judge Fricke concluded that Textron and TSV have the necessary minimum contacts in Washington and that Washington would be the most convenient and efficient forum. *Id.* She further concluded that transfer to a different jurisdiction would be inappropriate because Washington has a strong interest in protecting its residents. *Id.*

Textron objects, arguing that Judge Fricke failed to consider its specific connections to Washington apart from TSV's own connections to Washington. *See* Dkt. 23. TSV also objects, arguing that Judge Fricke only analyzed the first and third factors of the specific jurisdiction test, but failed to analyze the relatedness prong. *See id.* It argues that even if it has minimum contacts with the state of Washington, the Dodds' claims are not related to and do not arise from those contacts. *Id.* The Dodds argue that their claims do in fact "arise out of" or "relate to" the companies' contacts with Washington. Dkt. 25. The Dodds did not address the companies' argument that Textron

should be considered separate from TSV beyond reiterating that TSV is Textron's subsidiary. *Id.*

## II. DISCUSSION

### A. Legal Standard

The district judge must determine de novo any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

### B. Personal Jurisdiction

Claims against a defendant may be dismissed when a court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant seeks dismissal on these grounds, the plaintiff must prove jurisdiction is appropriate. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). To determine whether it has jurisdiction over a defendant, a federal court applies the law of the state in which it sits, as long as that law is consistent with federal due process. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). Washington grants courts the maximum jurisdictional reach permitted by due process. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004). Due process is satisfied when subjecting the entity to the court's power does not "offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[T]raditional notions of fair play and substantial justice" require that a defendant have minimum contacts with the forum state before it may be haled into a court in that forum. *Int'l Shoe*, 326 U.S. at 316.

The extent of those contacts can result in either general or specific personal jurisdiction over the defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). At issue here is whether this Court may exercise specific jurisdiction over Textron and TSV.

"Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citations omitted). "Additionally, any evidentiary materials submitted on the motion are construed in the light most favorable to the plaintiffs and all doubts are resolved in their favor." *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002) (internal quotation omitted).

Specific jurisdiction permits a district court to exercise jurisdiction over a nonresident defendant for conduct that "create[s] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). A defendant creates a substantial connection in a tort-based action when it (1) purposefully directs its activities at the forum state, (2) the lawsuit arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Picot*, 780 F.3d at 1211.

Purposeful direction constitutes an intentional action expressly aimed at the forum state, which causes harm, "the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir. 1993) (discussing *Calder v. Jones*, 465 U.S. 783 (1984)). In applying this test, the Court must "look[] to the defendant's contacts with the forum State

itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. "[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum state." *Id*. at 290.

If the plaintiff establishes the first two factors, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)). These considerations include the extent of the defendant's purposeful interjection into the forum, the burden on the defendant, conflict of sovereignty with the defendant's state, the forum state's interest, judicial efficiency, the importance of the forum to the plaintiff's interest in convenient and effective relief, and the possibility of alternate forums. *Id*. (citing *Core-Vent*, 11 F.3d at 1487–88).

**1. Textron Specialized Vehicles**

TSV argues that Judge Fricke failed to analyze the second factor of specific jurisdiction—whether the lawsuit arises out of or relates to the defendant's forum-related activities—and that TSV's contacts with Washington that were identified by Judge Fricke are unrelated to the Dodds' claims. Dkt. 23 at 3–7. TSV also argues that it would be unreasonable for the Court to exercise jurisdiction over TSV because Oregon law, rather than Washington law, applies to the Dodds' claims and thus Washington has minimal interest in the suit. *Id.* at 7–8.

The Dodds argue that their claims arose out of and relate to TSV's contacts with Washington because they purchased the Wildcat XX based on TSV's contacts with

Washington, they registered and licensed the vehicle in Washington, and they used the Wildcat XX in Washington. Dkt. 25 at 6–9. The Dodds also argue that the Court's assertion of jurisdiction over TSV would be reasonable because TSV sells the Wildcat XX in Washington and Washington has an interest in protecting its citizens. *Id.* at 9–11.

The Court agrees with TSV that Judge Fricke did not fully analyze the second factor of the personal jurisdiction analysis. TSV did not object to Judge Fricke's conclusion that the Dodds met their burden on the first factor by showing that TSV purposely directed its activities at Washington. Thus, only the second and third factors are addressed here.

**a. Relatedness**

A defendant is subject to specific personal jurisdiction if the plaintiff's claims "arise out of *or* relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Ct. of Calif., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017) (internal quotation and alterations omitted) (emphasis added). The Supreme Court clarified in *Ford Motor Co. v. Montana Eighth Judicial District Court* that "arise out of" and "relate to" are two separate standards and that either can satisfy the second prong of the specific jurisdiction test. 141 S.Ct. 1017, 1026 (2021). As a result, the relationship between the plaintiff's claims and the defendant's contacts does not need to be causal. Rather, it is sufficient for the plaintiff's claims to simply "relate to" the defendant's contacts with the forum. *Id.*

This case falls between two recent Supreme Court cases that have shaped modern specific personal jurisdiction analysis: *Ford* and *Bristol-Myers Squibb*. In *Ford,* the Supreme Court held that Ford was subject to personal jurisdiction in Montana and

Minnesota, even though the cars at issue had been manufactured and sold in different states, because Ford had advertised the same models in Montana and Minnesota and maintained dealerships and auto shops in those states. 141 S.Ct. at 1028. The Supreme Court held that "by making it easier to own a Ford, they encourage[d] Montanans and Minnesotans to become lifelong Ford drivers." *Id.* Relevant here, the plaintiffs in *Ford* were residents of and were injured in their respective forum states.

In contrast, in *Bristol-Myers Squibb*, over 600 plaintiffs sued Bristol-Myers in California over a drug called Plavix. 137 S. Ct. at 1778. Many of those plaintiffs were not residents of California and had not suffered any injury in California. *Id.* In fact, those plaintiffs had little to no connection with California. *Id.* The Supreme Court held Bristol-Myers was not subject to personal jurisdiction in California as to the out-of-state plaintiffs because its contacts with the state were unrelated to the plaintiffs' claims. *Id.* at 1782.

"[Q]uestions of personal jurisdiction must be decided on a case-by-case basis." *Pac. Atl. Trading Co., Inc. v. M/V Main Express*, 758 F.2d 1325, 1327–28 (9th Cir. 1985) (internal quotation omitted). In this case, as in *Ford*, the Dodds are residents of the forum state, Washington, and purchased the relevant product, the Wildcat XX, based on advertisements they viewed in the forum state. But as in *Bristol-Myers*, the Dodds did not purchase the Wildcat XX in the forum state, nor were they injured in the forum state.

The Fourth Circuit recently decided a similar case, *Wallace v. Yamaha Motors Corporation, U.S.A.*, No. 19-2459, 2022 WL 61430 (4th Cir. Jan. 6, 2022). In *Wallace*, the plaintiff was a South Carolina resident but had suffered an injury while driving a

Yamaha motorcycle in Florida. *Id.* at *1. The motorcycle was not designed, manufactured, distributed, or sold in South Carolina. *Id.* at *4. Nevertheless, the plaintiff sued in South Carolina and argued that Yamaha was subject to specific personal jurisdiction in the state because it marketed and sold the same motorcycles in South Carolina. *Id*. The Fourth Circuit held that South Carolina lacked personal jurisdiction over Yamaha because the plaintiff did not show "any connection between Yamaha's business in South Carolina and the accident that gives rise to her claims." *Id.* The Fourth Circuit likened the case to *Bristol-Myers Squibb* because the plaintiff did not show any relationship between Yamaha's activities in South Carolina and her claims, not even how the motorcycle ended up in South Carolina. *Id.*

While the place of injury is undoubtedly relevant to the specific jurisdiction analysis, it is not always the only forum that can exercise personal jurisdiction over a defendant in a particular suit. Specific jurisdiction is premised on "two sets of values—treating defendants fairly and protecting interstate federalism." *Ford Motor Co.*, 141 S. Ct. at 1025 (internal quotation omitted). Subjecting TSV to personal jurisdiction in a state where they market and sell the exact product at issue here is not unfair. TSV had "fair warning" that it may be subject to suit in the state of Washington for its activities here. *See id.* Similarly, this Court exercising personal jurisdiction over TSV raises no issue of interstate federalism. Washington is the state with the strongest nexus to TSV, the Dodds, and the Dodds' injuries.

Even considering the place of injury and the Fourth Circuit's holding in *Wallace*, this case is more in line with *Ford* than *Bristol-Myers Squibb*. The Dodds are Washington

residents, they purchased the Wildcat XX based on TSV's advertising of the exact same product in Washington, they test drove the product here, and they use and store the Wildcat XX in Washington; they just happened to suffer injuries while on a trip out-of-state. *See* Dkt. 11. *Ford* makes clear that the fact that the Wildcat XX was designed and manufactured elsewhere is not dispositive.

Further, *Ford* ascribes little weight to where the product was purchased. That fact seems even less relevant here, where the Dodds purchased the product while they were living in Washington, just across the Idaho border and only about an hour from their hometown after the nearby dealer in Washington sold out. Dkt. 11, ¶ 5. They brought the vehicle right back to Washington, paid Washington tax on it, and registered it in Washington. *Id.* ¶ 6. In contrast to the plaintiffs in *Bristol-Myers Squibb*, the Dodds had good reason to bring this suit in Washington. They are residents of the state, Paula Dodd received medical treatment here after the accident, and the product is located in the state.

In contrast to *Wallace*, it is clear how the Dodds' Wildcat XX ended up in Washington. They also had good reason for not purchasing the vehicle in Washington. Most importantly, the Dodds would not have purchased the Wildcat XX if not for TSV's contacts with Washington. TSV advertised the same model of vehicle in the state and the Dodds looked at and test drove the Wildcat XX at one of TSV's contracted dealerships in Washington prior to purchasing the vehicle in Idaho. *See* Dkt. 11.

Textron and TSV also submitted a recent Ninth Circuit case as supplemental authority. *See* Dkt. 26 (*LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852 (9th Cir. 2022)). In *LNS*, the plaintiffs purchased an aircraft to use in Arizona for work. 22 F.4th at

856. One of the plaintiffs was forced to make an emergency crash landing during a flight. *Id.* at 856–57. They sued, arguing negligence, negligence per se, strict products liability, and breach of warranty. *Id.* at 857. The Ninth Circuit affirmed the district court's dismissal of the case for lack of personal jurisdiction, holding that the defendants did not have sufficient minimum contacts in the state, and none of their contacts related to the plaintiffs' claims. *Id.* at 856.

Unlike in *Ford*, there was no evidence that the *LNS* defendants had ever sold, manufactured, repaired, or advertised the type of aircraft engine at issue in the case in Arizona. *Id.* at 863–64. The defendants did maintain a universally accessible passive website, but that alone was "insufficient to render the company subject to personal jurisdiction in the absence of other contacts." *Id.* at 863.

In contrast, TSV sells and advertises the exact same model of vehicle in Washington and the Dodds purchased the Wildcat XX based on TSV's advertisements in the state. TSV's contacts with Washington are similar to Ford's contacts with Minnesota and Montana and its contacts relate to the Dodds' claims in a similar way. In other words, this case aligns more with *Ford* than with either *Wallace* or *LNS*. The Dodds' claims are related to TSV's contacts with Washington.

**b. Reasonableness**

The Dodds have established that TSV has minimum contacts in Washington and that those contacts are related to or arise from their claims. Therefore, the burden shifts to TSV to show that it would be unreasonable for this Court to exercise jurisdiction. *Harris Rutsky*, 328 F.3d at 1132. Courts consider seven factors within this analysis:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.*

Judge Fricke concluded that TSV "injected its products into Washington to a great extent," failed to show it would be burdened by defending the suit in Washington, and that there was no conflict with TSV's home state. Dkt. 22 at 7. Judge Fricke also concluded that "Washington State has a strong interest in providing a forum for residents to seek redress for tortious injury" and that "no other forum would be more convenient or efficient." *Id.* TSV objects, arguing that Oregon substantive law would apply to this suit because that is where the injury occurred and that therefore Washington "has minimal interest in adjudicating this dispute." Dkt. 23 at 8. The Dodds argue that TSV sufficiently interjected its products into Washington, TSV does not present any evidence that it would be more reasonable to adjudicate the case in another jurisdiction, there is significant evidence located in the state, and TSV still markets and sells its products to Washington citizens. Dkt. 25 at 10–11.

TSV has not satisfied its burden to show that it would be unreasonable for this Court to exercise jurisdiction. TSV did not suggest that it does a minimal amount of business in the state or that defending the suit in Washington would be overly burdensome on it. There is also no apparent conflict with either Delaware or Georgia—the states in which TSV is "at home." Washington certainly has a strong interest in

protecting its citizens, and the bulk of the evidence is located in Washington, as are the plaintiffs. Finally, there seems to be no more convenient forum. None of the parties or evidence are in Idaho, where the vehicle was purchased, or Oregon, where the injury occurred. And while the accident did occur in Oregon, the vehicle is now in Washington, and the bulk of Paula Dodd's medical care following the accident occurred here. Even if the Court would have to apply Oregon law to the Dodds' claims (which is not necessarily clear), that cannot overcome the convenience and efficiency of this forum.

This Court may properly exercise personal jurisdiction over TSV in this suit. Thus, the R&R is ADOPTED as to TSV, and TSV's Motion to Dismiss is DENIED.

**2. Textron, Inc.**

Textron is correct that personal jurisdiction is specific to each defendant and that "[t]he existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017); *see also Calder*, 465 U.S. at 790 ("Each defendant's contacts with the forum State must be assessed individually."). After the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), courts in this Circuit use an "alter ego" test to determine whether a subsidiary's contacts can be imputed to a parent company.[1] *See Williams*, 851 F.3d at 1021. "[T]he alter ego test may be used to extend

[1] *Daimler* invalidated the Ninth Circuit's "agency" test for general personal jurisdiction over parent companies but did not rule out the possibility that an agency relationship may be

personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).

"The party asserting jurisdiction bears the burden to establish jurisdictional facts." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). When the party asserting jurisdiction does not seek jurisdictional discovery, "we must evaluate whether the pleadings and affidavits establish a prima facie showing of jurisdictional facts." *Id.* (internal quotations omitted).

In their complaint, the Dodds assert that Textron "designed, tested, manufactured, promoted, distributed and/or sold, throughout the nation and within the State of Washington, the 2018 Textron Off Road Wildcat XX side-by-side off road vehicle." Dkt. 1, ¶ 1.2. Textron claims that it plays no part in designing, manufacturing, selling, advertising, or distributing vehicles and off-road products. Dkt. 23 at 8; Dkt. 8-1. It also explains that it is completely separate from TSV, claiming that each maintains its own employees, facilities, accounting systems and records, operations, and departments. Dkt. 23 at 8.

The Dodds have failed to make a prima facie showing of personal jurisdiction over Textron. There is no claim, and no evidence, that TSV acts as Textron's alter-ego. While

relevant to the question of personal jurisdiction over parent companies. 571 U.S. at 134–35. The Ninth Circuit subsequently recognized that *Daimler*'s holding also invalidated its agency test in relation to specific jurisdiction. *Williams*, 851 F.3d at 1024. While an agency relationship may still be relevant to personal jurisdiction in cases such as this, the Dodds make no such argument and the Court therefore focuses on whether Textron has its own contacts with Washington and whether TSV could be considered Textron's alter-ego.

Textron may have its own contacts in Washington, the Dodds provide no information as to what those contacts are or how their claims "arise from" or are "related to" those contacts. The bald assertion that Textron "designed, tested, manufactured, promoted, distributed and/or sold, throughout the nation and within the State of Washington, the 2018 Textron Off Road Wildcat XX" is insufficient. Dkt. 1, ¶ 1.2. It is undisputed that TSV does all those things in Washington, and Textron's relationship with TSV alone is insufficient to establish personal jurisdiction over Textron. *See Doe*, 248 F.3d at 925.

The Dodds did not meet their burden to establish that this Court has personal jurisdiction over Textron. Thus, the R&R is REJECTED as to Textron, and Textron's Motion to Dismiss is GRANTED.

**C.     Venue**

Textron and TSV finally argue that this case should be dismissed under Federal Rule of Civil Procedure 12(b)(3) for improper venue because they are residents of different states, a substantial part of the events giving rise to the suit occurred in Oregon and are not connected to Washington, and the Dodds do not allege that there is no other district where an action could be brought. Dkt. 8 at 7. Judge Fricke concluded that because Textron and TSV were subject to personal jurisdiction in Washington, they were considered residents of Washington. Dkt. 22 at 7–8 (citing 18 U.S.C. § 1391(c)). Textron and TSV object, arguing that the Court does not have personal jurisdiction over them and that the case should be transferred to a venue that does. Dkt. 23 at 9. The Dodds did not respond, aside from their arguments regarding personal jurisdiction.

As established above, this Court may exercise personal jurisdiction over TSV, and therefore the case will not be dismissed pursuant to Rule 12(b)(3).

Textron and TSV argued alternatively that the Court should transfer the case to another district, suggesting Oregon, Idaho, or the Eastern District of Washington.[2] Dkt. 16 at 9. The Dodds argued against transfer, asserting that the Western District is the proper venue because TSV has registered agents in Olympia, and they conduct substantial business in the market here. Dkt. 10 at 15–16. Judge Fricke concluded that transfer out of the Western District of Washington was improper. Dkt. 22 at 8–9. Textron and TSV object, asserting that "the venue should be transferred to a judicial district in which a substantial part of the events or omissions giving rise to this claim occurred." Dkt. 23 at 9.

Venue is proper in (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;" (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or (3) "if there is no district in which an action may otherwise be brought . . . , any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). "For the convenience of parties and

---

[2] Textron and TSV first ask this Court to transfer the case to the Eastern District of Washington (or Idaho or Oregon) in their reply brief, partially in response to the Dodds' own discussion of transfer. *See* Dkts. 10, 16. Typically, an issue raised for the first time in a reply brief is waived. *See Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996). But the Court "has discretion to consider an issue even if it was raised in a reply brief" especially when both parties have had an opportunity to address the issue. *See Yageo Am. Corp. v. Tseng*, C06-0227RSL, 2006 WL 8454994, at *1 (W.D. Wash. Apr. 21, 2006). Here, both parties have addressed the issue and therefore the Court will consider it.

witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404. The Ninth Circuit has set forth a number of factors the court should consider in deciding whether transfer is appropriate. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499–500 (9th Cir. 2000). Most relevant here are consideration of: (1) "the plaintiff's choice of forum," (2) "the respective parties' contacts with the forum," (3) "the contacts relating to the plaintiff's cause of action in the chosen forum," and (4) "the ease of access to sources of proof." *Id.*

The Dodds filed this suit in the Western District of Washington at Tacoma. Dkt. 1. They indicate that the Western District is the most proper venue because Textron and TSV have registered agents in Olympia and because the companies conduct business here. While the state of Washington may exercise personal jurisdiction over TSV in this suit, the most convenient location is the Eastern District of Washington rather than the Western District. The Dodds live in the Eastern District, received medical care in the Eastern District, and the vehicle is stored in the Eastern District. The fact that TSV has a registered agent in the district is unhelpful. After receiving service, the agent has little else to do with this case. The only other relevant connection to this district is the location of the parties' attorneys. Such connections to this district cannot outweigh the convenience of the Eastern District, which has the connections that are most related to the claims at hand: TSV's marketing of the Wildcat XX to the Dodds and TSV's retail stores where the Dodds test drove the vehicle.

## III. ORDER

The Court having considered the R&R, Plaintiff's objections, and the remaining record, does hereby **ORDER** that the R&R is **ADOPTED as to TSV** and **REJECTED as to Textron**. It is hereby **ORDERED** that Textron and TSV's Motion to Dismiss, Dkt. 8, is **GRANTED in part as to Textron** and **DENIED in part as to TSV**. It is hereby further **ORDERED** that the request to transfer venue is **GRANTED**. The Clerk shall transfer this case to the Eastern District of Washington and close the case.

Dated this 9th day of February, 2022.

BENJAMIN H. SETTLE
United States District Judge